UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DENISE WAULK,

        Plaintiff,

v.                                Case No.  8:11-cv-2609-T-23AEP

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits ("DIB"), and Supplement Security Income ("SSI").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, I recommend that the Commissioner's decision be affirmed.

## I.

### A.    Procedural Background

Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 172-82).  The Commissioner denied her claims both initially and upon reconsideration (Tr. 98-112).  Plaintiff then requested an administrative hearing (Tr. 113-14).  Per her request, the ALJ held a hearing at which Plaintiff and her mother appeared and testified (Tr. 39-64).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denying Plaintiff's claims for benefits (Tr. 17-38).  Subsequently, Plaintiff requested review from the

Appeals Council, which the Appeals Council denied (Tr. 1-6, 14-15). Plaintiff then timely filed a complaint with this Court (Dkt. No. 1). The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

### B.      Factual Background and the ALJ's Decision

Plaintiff, who was born on September 16, 1961, claims disability beginning June 10, 2008 (Tr. 172, 176). She has a tenth-grade education (Tr. 43-44). Her past relevant work experience includes work as a food assembler, deli clerk, nursery school attendant, and warehouse worker (Tr. 29-30, 44-45, 59-60). She alleges disability due to mental illness and back problems and pain (Tr. 45-48, 350-52).

After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: low back pain, bipolar disorder, panic disorder, post-traumatic stress disorder, borderline personality traits, and substance abuse disorder (Tr. 22-24). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 24-26). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work, except that Plaintiff could only occasionally climb ladders, ropes, scaffolds, ramps, and stairs; could only occasionally balance, kneel, stoop, crouch, and crawl; could only perform unskilled, low-stress work that does not involve interaction with the general public; and could only occasionally interact with coworkers and supervisors (Tr. 26-29). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence

established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC (Tr. 27).

Considering her noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 29-30). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a small parts assembler, hand packer, and eyeglass frame assembler (Tr. 30-31). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 31).

## II.

To be entitled to benefits, a claimant must be disabled, meaning the individual must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential

3

evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th

4

Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### III.

Plaintiff argues here that the ALJ erred by (1) failing to afford the opinion of Dr. Lefler appropriate weight, (2) improperly discounting Plaintiff's credibility, and (3) improperly rejecting the Global Assessment of Functioning ("GAF") scale. For the reasons that follow, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

### A.   Medical Opinions

Plaintiff asserts the ALJ should have afforded controlling weight to the opinion of Dr. Lefler that Plaintiff was essentially disabled. In assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The Social Security Regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence.

5

*See* 20 C.F.R. §§ 404.1527, 416.927.  In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization.  20 C.F.R. §§ 404.1527(c), 416.927(c).  For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).  Further, the more consistent the medical opinion is with the record as a whole, the more weight that opinion will receive.   20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).   Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004).  Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records.  *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).  In fact, the ALJ may reject any opinion when it supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

### 1. Dr. Lefler

In November 2010, an Advanced Registered Nurse Practitioner at Suncoast Center for Community Mental Health, Inc. ("Suncoast ARNP") filled out a Psychiatric Impairment Questionnaire, which Dr. Lefler signed-off on three days later (Tr. 680-83).  As the Questionnaire indicates, Plaintiff was diagnosed with Bipolar I Disorder, not otherwise specified, and with

polysubstance dependence in remission (Tr. 681).  The symptoms associated with Plaintiff's diagnosis included sleep disturbance; personality change; mood disturbance; emotional liability; delusions or hallucinations; substance dependence; recurrent panic attacks; paranoia or inappropriate suspiciousness; difficulty thinking or concentrating; suicidal ideation or attempts; blunt, flat or inappropriate affect; intrusive recollections of a traumatic experience; persistent rational fears; generalized persistent anxiety; and hostility and irritability (*id.*).  Further, Plaintiff complained of being depressed and hypervigilant and having difficulty focusing, flashbacks, anger, and visions of dead relatives (*id.*).  The opinion indicated that Plaintiff's combined impairments would reasonably be expected to produce the symptoms and functional limitations identified, that her impairments lasted or would be expected to last at least twelve months, and that she would be required to be absent from work more than twice per month due to her impairments or treatment (Tr. 682).  It was further found that Plaintiff had marked restrictions of activities of daily living, extreme difficulties in maintaining social functioning, and frequent deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner but that insufficient evidence existed to determine whether Plaintiff had episodes of deterioration or decompensation in work or work-like settings that caused Plaintiff to withdraw from the situation or to experience exacerbation of signs and symptoms (Tr. 682-83).

In considering this opinion, the ALJ correctly noted that the Suncoast ARNP was not an acceptable medical source but that Dr. Lefler countersigned the Questionnaire (Tr. 29).  Notwithstanding, the ALJ found that the opinion rendered in the Questionnaire was not consistent with Plaintiff's conservative treatment history and unremarkable mental status examinations

given that Plaintiff was consistently observed to be oriented and cooperative with intact concentration and intact cognitive functioning (*id.*). Accordingly, the ALJ afforded the opinion little weight as it proved inconsistent with the observations and treatment plans in the progress and treatment notes from Suncoast (*id.*).

Indeed, Plaintiff's treatment records at Suncoast indicate a conservative treatment regimen with only medication and group and individual therapy or counseling sessions (Tr. 589-679, 684-96). For instance, in July 2009, Plaintiff complained of ongoing symptoms of mental illness, including paranoia around others, severe anxiety, shaking, crying uncontrollably, poor concentration, highs and lows, hearing voices, racing thoughts, and occasional suicidal thoughts (Tr. 599, 602, 609, 613). At the same time, Plaintiff was assessed as having only moderate risk of suicide that could be adequately managed with a safety plan using her current support systems, who were able and willing to participate in the completion and maintenance of a safety plan (Tr. 608). Progress notes in July 2009 further indicate that, although Plaintiff complained of her ongoing anxiety and racing thoughts, she did not have suicidal or homicidal ideations and things were improving in her personal life (Tr. 609). Furthermore, the therapist discussed with Plaintiff the importance of taking care of herself and stopping her worrying behavior and arranged for Plaintiff to obtain refills of her medication (Tr. 609). At no point did the therapist observe that Plaintiff was in any acute distress, that she was a danger to herself or anyone else, that she required in-patient mental health treatment, or that Plaintiff required more than therapy and medication to treat her mental health issues.

Moreover, by Plaintiff's own admission, she benefitted from therapy and was glad she was

8

getting help (Tr. 613).  Additionally, throughout the course of her treatment, Plaintiff indicated she had no suicidal or homicidal ideations and was observed as having both an above-average level of participation and an above-average ability to apply topic information to her own situation during group therapy as well as an average to above-average ability to give feedback to others in the group (Tr. 596, 598, 610, 611, 612, 614, 616, 674).  In fact, despite Plaintiff's complaints of issues with depression, paranoia, crying spells, panic attacks, anxiety, mood swings, trouble sleeping, and isolation, many of which either preceded her alleged disability onset date or occurred at the beginning of her treatment at Suncoast following her alleged disability onset date, Plaintiff's progress notes indicate that, although Plaintiff complained of stressors and needed to vent often, she continued to make progress, state she was feeling better or things were going "so-so" or okay, reported that medication was helping, and consistently denied suicidal or homicidal ideations (Tr. 589-645).  Instead, she participated in group and individual therapy sessions, continued with medication management, and repeatedly demonstrated progress with her mental impairments.  Though Plaintiff later complained of many of the same issues, she continued to be treated conservatively, stated that she benefitted from group therapy, stated that her medication was helping on some occasions but not on others, was not assessed as a high risk for suicide, and exhibited thought content and processes that were within normal limits, fair insight and judgment, intact memory and orientation, fair attention and concentration, and no distortions, delusions, obsessions, phobias, or auditory or visual hallucinations upon mental status examination (*see* Tr. 654-62, 669-79, 686).

Based on the foregoing, the ALJ correctly afforded little weight to the opinion of the

Suncoast ARNP, which was countersigned by Dr. Lefler, that Plaintiff needed to be absent from work at least two days per month (Tr. 29). As the record indicates, Plaintiff received conservative treatment plans throughout her treatment at Suncoast, and, despite her subjective complaints, Plaintiff consistently had unremarkable mental status examinations and exhibited no major issues with respect to interaction, orientation, concentration, and cognitive functioning. As such, the Suncoast treatment records did not indicate a need for Plaintiff to miss work more than twice per month due to her mental impairments, as the Suncoast ARNP had opined and Dr. Lefler had countersigned. Accordingly, the ALJ properly considered the opinion, afforded it appropriate weight, and substantial evidence supports her decision.

### 2. Drs. Hodan and Okonkwo-Onuigbo

As to Drs. Hodan and Okonkwo-Onuigbo, Plaintiff asserts a cursory argument that the ALJ failed to evaluate or explain the weight given to their opinions. The Regulations require that the ALJ consider the medical opinions in the record together with the rest of the evidence received. 20 C.F.R. §§ 404.1520b, 404.1527(b), 416.920b, 416.927(b). In determining the weight to afford a medical opinion, the ALJ considers the factors detailed above and discuss the weight afforded to those opinions. *See Winschel*, 631 F.3d at 1179; 20 C.F.R. §§ 404.1527(c), 416.927(c). Essentially, the ALJ must state the grounds for his decision with some measure of clarity since a court need not affirm simply because some rationale might support the ALJ's conclusion. *Winschel*, 631 F.3d at 1179 (citing *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)).

In this instance, although the ALJ did not assign a specific weight to the opinions of Drs.

10

Hodan and Okonkwo-Onuigbo, the ALJ considered their opinions in rendering her decision and, in so doing, complied with the requirements of 20 C.F.R. §§ 404.1527(b), 416.927(b).  Namely, the ALJ discussed the findings of both Drs. Hodan and Okonkwo-Onuigbo and stated that, though the evidence was outside of the current decision's relevant period or from a prior claim filing, she considered the opinions and findings of Drs. Hodan and Okonkwo-Onuigbo for their ability to offer insight into the background of Plaintiff's current claims (Tr. 23).  Indeed, the ALJ noted that Dr. Okonkwo-Onuigbo recommended a treatment plan of muscle relaxants and non-steroidal anti-inflammatory drugs after MRIs revealed some lumbar disc bulging and a small partial tear in Plaintiff's right shoulder and a nerve conduction study revealed evidence of lumbosacral radiculopathy (Tr. 23, 419-27).  Further, in discussing Dr. Hodan's findings, the ALJ stated that Dr. Hodan examined Plaintiff and observed Plaintiff to be tense with a sad mood, restricted affect, and poor memory but to be alert and cooperative with clear speech and no formal thought disorder (Tr. 23, 428-32).  As the ALJ noted, Dr. Hodan diagnosed Plaintiff with bipolar disorder, panic disorder without agoraphobia, post-traumatic stress disorder, attention deficit hyperactivity disorder, and alcohol and cannabis abuse in sustained remission and assigned Plaintiff a GAF score of 55.

Notably, neither of these physicians had long-standing treatment relationships with Plaintiff.  Rather, Plaintiff was referred to Dr. Okonkwo-Onuigbo by Dr. Howell for further evaluation of neuropathy and was referred to Dr. Hodan for a consultative psychological evaluation (Tr. 424, 428).  As such, the ALJ was not required to afford the opinions substantial or considerable weight.  *See Crawford*, 363 F.3d at 1159 (stating that the testimony of a *treating*

11

physician must be afforded substantial or considerable weight unless good cause is shown to the contrary); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).   Though the ALJ did not explicitly state the weight afforded to these opinions, the opinions did not conflict with the ALJ's findings. *Wright v. Barnhart*, 153 Fed. App'x 678, 684 (11th Cir. 2005).   Accordingly, to the extent the ALJ erred, any error in not assigning a particular weight to the opinions is harmless. *Id.*  Notwithstanding, the ALJ considered the opinions for their ability to offer insight into the background of Plaintiff's current claims even though the evidence was outside of the relevant time period or submitted for a prior application for benefits (Tr. 23).   Plaintiff fails to illustrate how the ALJ erred in that regard.[1]   Accordingly, the ALJ adequately considered and explained her use of the opinions of Drs. Hodan and Okonkwo-Onuigbo and supporting evidence.

### B.      Credibility

In addition to the objective evidence of record, the Commissioner must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence.   *See* 20 C.F.R. §§ 404.1529, 416.929.  In social security disability cases, credibility determinations fall within the province of the ALJ.  *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).   Typically, the ALJ makes credibility determinations regarding Plaintiff's subjective complaints, including pain, and must provide specific reasons for his credibility finding.  *See Holt v. Sullivan*, 921 F.2d 1221,1223 (11th Cir. 1991); Social Security Ruling 96-7p, 1996 WL 374186 (S.S.A. July 2,

---

[1]  Furthermore, the ALJ discussed the medical opinions submitted with Plaintiff's current claim for disability, and the weight afforded to each, in great detail in her decision (Tr. 28-29).

1996).  To establish a disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or (2) that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms.  *Wilson*, 284 F.3d at 1225; *see* 20 C.F.R. §§ 404.1529, 416.929.  When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so.  *Wilson*, 284 F.3d at 1225; *Foote v. Chater,* 67 F.3d 1553, 1561-62 (11th Cir. 1995).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *Foote,* 67 F.3d at 1562.

In rendering her decision, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of both her physical and mental symptoms not credible (Tr. 27). As to Plaintiff's physical impairments, the ALJ found that the combination of Plaintiff's limited treatment history, benign clinical findings, and Plaintiff's own reports that she was still capable of a wide range of activities demonstrated that Plaintiff's physical impairments were not as severe as alleged and thus that Plaintiff was not fully credible (*id.*).  For instance, as the ALJ noted, Dr. Duchesneau examined Plaintiff for a consultative internal medicine examination in July 2009 (Tr. 522-24).  During the examination, Plaintiff reported engaging in various activities of daily living, including cooking, cleaning, doing laundry, shopping, watching television, visiting with family, and dressing, feeding, and bathing herself (Tr. 522).  Upon physical examination, Dr. Duchesneau observed Plaintiff to be in no acute distress and to have normal gate, full ranges of motion and strength in the upper and lower extremities, no noted motor or sensory deficits, intact

dexterity, and no abnormalities with the exception of some tenderness in the lumbar spine (Tr. 523-24).  Dr. Duchesneau diagnosed Plaintiff as having chronic pain syndrome, low back pain status post motor vehicle crashes, and high blood pressure and assessed Plaintiff's prognosis as fair (Tr. 524).  Further, progress notes from June and July 2009 indicate that Plaintiff complained of low back pain and leg pain, for which she was only prescribed medication  (Tr. 517-19, 529-35).  Again in August and March 2010, Plaintiff complained of pain and dizzy spells following a fall but presented with no abnormal findings upon examination except for some tenderness in the knee (Tr. 699-702).    Furthermore, in addition to the daily activities reported to Dr. Duchesneau, Plaintiff stated that she could use public transportation, handle her own finances, follow instructions, talk with friends and family, and perform light household chores such as vacuuming and dusting (Tr. 48-49, 287-93, 321-26, 522, 542).  Accordingly, given the limited treatment sought by Plaintiff for her physical impairments, the lack of any significant findings upon examination, and the conservative treatment for Plaintiff's physical impairments, combined with Plaintiff's own report of her daily activities, the ALJ properly found Plaintiff's statements regarding the severity of her physical impairments not entirely credible.

Similarly, with respect to Plaintiff's mental impairments, the ALJ found that Plaintiff's testimony was not fully credible due to her routine and conservative treatment history, unremarkable mental status examinations, and Plaintiff's self-reported activities of daily living (Tr. 27).  Initially, around the time of her alleged onset, Plaintiff admitted that she believed medication was helpful and that she realized a need to stay on medication to stabilize herself emotionally, especially since she had stopped taking her medication in 2004 (Tr. 428-29, 463).

14

After resuming her medication, she reported in June 2008 that she was doing okay (Tr. 455). Shortly thereafter, Dr. Hodan examined Plaintiff and found her to be tense with a sad mood, restricted affect, and poor memory but to be alert, clear-thinking, cooperative, in no acute distress, well-oriented, and with clear speech and no formal thought disorder (Tr. 23, 428-32). In July 2009, Dr. Trimmer performed a consultative psychological examination of Plaintiff and found Plaintiff cooperative with coherent and goal-directed thought processes, no evidence of delusions or hallucinations and her manner of relating, social skills, and overall presentation adequate (Tr. 540-43). Dr. Trimmer noted that Plaintiff's mood was depressed but that she was oriented, had intact attention and concentration, had intact recent and remote memory, had below average intellectual functioning, fair insight, fair judgment, was capable of understanding and following simple instructions and directions, was capable of performing some simple tasks independently, appeared capable of maintaining attention and concentration for simple tasks, might have difficulty attending to a routine and maintaining a schedule, appeared capable of learning new tasks in accordance with her level of intellectual functioning, appeared to use fair judgment when making decisions, appeared to be able to relate to and interact appropriately with others, and appeared to have difficult dealing with stress (Tr. 542-43). Though Dr. Trimmer found Plaintiff's prognosis guarded, she recommended that Plaintiff continue with psychological and psychiatric treatment (Tr. 543). Later, while seeking treatment from the Pinellas County Health Department in August and November 2010, Plaintiff consistently appeared awake, alert, oriented, and in no apparent distress (Tr. 699-701).

Furthermore, upon review of Plaintiff's medical records, all of the state agency

psychologists opined that Plaintiff was no more than moderately limited by her mental impairments in any functional areas (Tr. 433-50, 545-80).[2]  For example, in July 2008, Dr. Levasseur opined that Plaintiff was able to understand and follow instructions, able to get along with others and demonstrate a cooperative attitude, able to make basic work decisions, and able to adapt adequately to work environments, yet had some reduction in concentration that would limit her ability to complete tasks (Tr. 435).  In October 2008, Dr. Deatrick found Plaintiff might have difficulty with complex tasks but appeared to be capable of routine, repetitive tasks; Plaintiff showed some deficits in concentration, persistence, and pace but was capable of performing routine, repetitive tasks; Plaintiff was capable of very basic socialization; and Plaintiff's adaptive skills were essentially intact (Tr. 492).  Following that, in August 2009, Dr. Hamlin found that Plaintiff had the capacity to follow work-like procedures and instructions, had adequate attention and concentration to sustain focus, retained the capacity to appropriately interact with others in a structured setting, and had a somewhat decreased adaptability, although not entirely compromised, though she retained the capability to adjust to a work environment (Tr. 547).  Subsequently, in November 2009, Dr. Dinwoodie opined that Plaintiff was capable of understanding and following instructions, capable of sustaining concentration for task completion, capable of completing a full workday and workweek, capable of socially appropriate behavior, and aware of normal hazards and able to use judgment to avoid them (Tr. 565).

In addition, Plaintiff's records from her treatment at Suncoast and reports of her daily

---

[2]  State agency medical consultants are considered experts in the Social Security disability evaluation process.  20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i).

activities prove inconsistent with her allegations of disabling symptoms, as discussed more fully above.  Based on the foregoing, therefore, substantial evidence supported the ALJ's credibility finding as to Plaintiff's subjective complaints.  Accordingly, the ALJ did not err in finding Plaintiff's subjective complaints not fully credible.[3]

Plaintiff also takes issue with the assignment of little weight to the testimony of Plaintiff's mother.  In addressing the testimony of Plaintiff's mother, the ALJ stated that she carefully considered the testimony but that, for the most part, Plaintiff's mother repeated the testimony and reports of Plaintiff regarding the severity and nature of Plaintiff's symptoms (Tr. 28).  Accordingly, the ALJ found the mother's testimony credible only to the extent that it was consistent with the RFC (*id.*).  Indeed, at the hearing, Plaintiff's mother simply testified that Plaintiff did not consume alcohol at home yet would occasionally consume alcohol at a neighbor's house and that Plaintiff remains home most of the time but would sometimes go across the street to a friend's house (Tr. 56-58).  The testimony did not provide any new information regarding the nature or severity of Plaintiff's impairments.  Instead, as the ALJ correctly noted, the testimony that Plaintiff's mother provided simply repeated the testimony that Plaintiff provided.[4]  Plaintiff does not argue to the contrary but rather contends, as a general proposition,

---

[3]  Notably, even though the ALJ found Plaintiff's complaints regarding her mental impairments not entirely credible, the ALJ afforded Plaintiff the benefit of the doubt and thus limited Plaintiff to unskilled, low-stress work with no interaction with the general public and no more than occasional interaction with coworkers and supervisors (Tr. 26-29).  Plaintiff does not contend that the RFC does not account for her credible mental impairments and limitations, nor can she.

[4]  As such, the ALJ's rejection of the testimony of Plaintiff's mother is implicit given the ALJ's rejection of Plaintiff's subjective complaints.  *See Osborn v. Barnhart*, 194 Fed.

that the Commissioner routinely rejects third-party sources unless they conflict with a claimant's testimony. As Plaintiff has failed to demonstrate that the ALJ *in this action* has erred in finding the testimony of Plaintiff's mother not entirely credible, Plaintiff's argument lacks merit.

In sum, the ALJ applied the appropriate legal standards and afforded Plaintiff's statements regarding her subjective complaints, as well as the testimony of Plaintiff's mother, the appropriate weight. In doing so, the ALJ applied the appropriate legal standards and her decision is supported by substantial evidence.

### C.    GAF Scale

Plaintiff also asserts that the ALJ erred by rejecting GAF scores assigned to Plaintiff ranging from 49 to 55. A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 30 (4th ed. 1994) ("DSM-IV"). A GAF score between 41 and 50 denotes "serious symptoms" or "any serious impairment in social, occupational, or school functioning." *Id.* at 32. Indeed, a GAF score of 41 to 50 indicates severe impairments. *McCloud v. Barnhart*, 166 Fed. App'x 410, 418 (11th Cir. 2006). Moving up the scale, however, a GAF score between 51 and 60 indicates only "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning." DSM-IV at 32.

Here, the record indicates that nurses and counselors assigned Plaintiff GAF scores

---

App'x 654, 666 (11th Cir. 2006) ("Even if the ALJ fails to make an explicit credibility determination as to a family member's testimony or statements, however, we will not find error if the credibility determination was implicit in the rejection of the claimant's testimony" (citations omitted)).

ranging from 45 to 55 throughout her course of treatment (*see, e.g.,* Tr. 455, 483-84, 516, 620, 621, 624, 633, 634, 644-45, 654, 656, 659-60, 661-62, 664, 669-70, 692). These opinions are not entitled to any significant weight as they are not opinions from an acceptable medical source. *See* 20 C.F.R. §§ 404.1513(a) and (d), 404.1527(a)(2), 416.913(a) and (d), 416.927(a)(2). Dr. Hodan, an acceptable medical source, assigned Plaintiff a GAF score of 55 upon completion of his consultative psychological evaluation (Tr. 428-30). Given the GAF score of 55, Dr. Hodan found that Plaintiff had only moderate limitations. *See* DSM-IV at 32. In reviewing the ALJ's decision, her findings comport with Dr. Hodan's assessment; namely, the ALJ found that Plaintiff had no more than moderate limitations in functioning (Tr. 24-26). Plaintiff does not argue to the contrary. Instead, Plaintiff asserts that the Court should "send a message to the Commissioner" regarding the use of the GAF scale. As the ALJ correctly noted, and the Eleventh Circuit has recognized, however, "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *Wind v. Barnhart*, 133 Fed. App'x 684, 692 n.5 (11th Cir. 2005) (quoting Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746-01 (Aug. 21, 2000)). Thus, no "message" need be sent to the Commissioner.

Notwithstanding the foregoing, the ALJ considered the GAF scores at step two in determining whether Plaintiff had a severe impairment and, given the Commissioner's position on the use of GAF scores, properly afforded them little weight in determining Plaintiff's RFC (Tr. 28). As such, the ALJ applied the correct legal standards and her decision is supported by

substantial evidence.

**IV.**

Accordingly, for the foregoing reasons, it is

RECOMMENDED:

1.  The decision of the Commissioner be AFFIRMED.

2.  The Clerk be directed to enter final judgment in favor of the Commissioner and close

the case.

IT IS SO REPORTED in Tampa, Florida, on this 11th day of February, 2013.


ANTHONY E. PORCELLI
United States Magistrate Judge

## **NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*

Copies furnished to:

Hon. Steven D. Merryday

Counsel of Record

21